

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| UNITED STATES OF AMERICA, | Cause No. CR 15-57-BLG-SPW |
|---|---|
| Plaintiff/Respondent, | CV 19-33-BLG-SPW |
| vs. | ORDER DENYING § 2255 MOTION AND DENYING CERTIFICATE OF APPEALABILITY |
| JOSHUA LEE HELM, | |
| Defendant/Movant. | |

This case comes before the Court on Defendant/Movant Joshua Lee Helm's motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. Helm is a federal prisoner proceeding pro se.

On August 26, 2019, the Court explained that most of Helm's allegations did not support an inference of prejudice, that is, "that counsel's unreasonable performance caused him to lose a realistic opportunity to obtain a better outcome or convinced him to plead guilty even though he might reasonably have opted for trial." Order (Doc. 160) at 2. He was permitted to file an amended motion.

On November 18, 2019, Helm submitted his original motion, refiled, plus the amended motion he was ordered to file (Docs. 165, 165-1).

**I. Preliminary Review**

Before the United States is required to respond, the Court must determine

1

whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts. A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolas*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). But the Court should "eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

## II. Background

On May 22, 2015, a grand jury indicted Helm on one count of conspiring to distribute 50 or more grams of methamphetamine between May 2014 and September 2014, a violation of 21 U.S.C. § 846 (Count 1); possessing methamphetamine with intent to distribute it on or about July 22, 2014, and possessing a Springfield .45-caliber pistol in furtherance of that crime, violations of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c)(1)(A) (Counts 2 and 3); possessing methamphetamine with intent to distribute it on or about August 16, 2014, and possessing a Ruger P95 9mm-pistol in furtherance of that crime,

2

violations of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c)(1)(A) (Counts 4 and 5); possessing 50 or more grams of methamphetamine with intent to distribute it on or about September 3, 2014, and possessing a Hi-Point .380-caliber pistol in furtherance of that crime, violations of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c)(1)(A) (Counts 6 and 7); and two counts of distributing methamphetamine on May 8 and May 22, 2014, violations of 21 U.S.C. § 841(a)(1) (Counts 8 and 9). The United States also sought forfeiture of the three firearms. *See* Indictment (Doc. 1) at 2–5.

On October 29, 2015, on the United States' motion, Counts 4 and 5 were dismissed with prejudice. *See* Gov't Mot. to Dismiss (Doc. 51); Order (Doc. 52).

If convicted on Counts 1 or 6, Helm faced a mandatory minimum sentence of five years and a maximum of 40 years. *See* 21 U.S.C. § 841(b)(1)(B)(viii). If convicted on Count 3 or Count 7, he faced a mandatory minimum sentence of five years and a maximum of life, consecutive to any sentence imposed on the drug trafficking counts. If convicted on both Counts 3 and 7, he faced a mandatory minimum sentence of thirty years and a maximum of life, consecutive to any sentence imposed on the drug trafficking counts. *See* 18 U.S.C. § 924(a)(1)(A)(i), (C)(i), (D)(ii) (eff. Oct. 6, 2006); *Deal v. United States*, 508 U.S. 129, 137 (1993). Therefore, if Helm were convicted on either Count 1 or Count 6 (or both), and also convicted on Count 3 and Count 7, he would be sentenced to at least 35 years in

prison.[1]

Helm filed pretrial motions, including motions to dismiss (Doc. 69) and to suppress evidence (Doc. 28), and initially chose to stand trial. On the morning trial was to begin, Helm accepted a plea offer. He agreed to plead guilty to Counts 1 and 3 of the Indictment. The United States agreed to dismiss the remaining counts, Counts 2, 6, 7, 8, and 9.[2] Helm preserved his right to appeal denial of his pretrial motions and would be permitted to withdraw his guilty pleas if he prevailed on appeal. He agreed to forfeit the firearms involved in Count 3 and 7. *See* Plea Agreement (Doc. 90) at 2 ¶ 2 paras. 1, 3; *id.* at 3 ¶ 3, 6 ¶ 4; Change of Plea Tr. (Doc. 108) at 15:5–15:20. The United States agreed to seek a two-level reduction in Helm's offense level for acceptance of responsibility, and Helm agreed to waive his right to appeal the sentence. *See* Plea Agreement at 9 ¶ 6, 10 ¶ 8. Helm pled guilty in open court on February 18, 2016. *See* Minutes (Doc. 91).

At sentencing, Helm was found responsible for at least 50 grams but less than 150 grams of actual methamphetamine. The base offense level was 30. Helm

---

[1] If Count 5 had not been dismissed, Helm would have been facing a mandatory minimum sentence of 65 years in prison. But dismissal of Count 5 was plainly in the interest of justice.

[2] The plea agreement refers to Counts 4–9, but Counts 4 and 5 had already been dismissed with prejudice. The plea agreement did not refer to dismissal of Count 2. A paragraph reciting that Helm would plead guilty to Count 2 was marked through, and the mark was initialed by the parties. *See* Plea Agreement (Doc. 90) at 2 ¶ 2 para. 2. Helm did not plead guilty to Count 2. He was convicted of Counts 1 and 3, and all other counts were dismissed. *See* Change of Plea Tr. (Doc. 108) at 12:1–12:21; Minutes (Doc. 127); Judgment (Doc. 130) at 1.

received a two-level downward adjustment for acceptance of responsibility. With a total offense level of 28 and a criminal history category of IV, Helm's advisory guideline range on Count 1 was 110 to 137 months. *See* Statement of Reasons (Doc. 131) §§ I(A), III; Presentence Report ¶¶ 26–34, 37–53; U.S.S.G. ch. 5 Part A (Sentencing Table). Helm was sentenced to serve 110 months on Count 1 and a consecutive term of 60 months on Count 3 for a total prison term of 170 months, to be followed by five years' supervised release. *See* Minutes (Doc. 127); Judgment (Doc. 130) at 2–3.

Helm appealed. On May 10, 2018, the Court of Appeals affirmed his conviction. *See* Mem. (Doc. 141) at 4. His conviction became final on August 8, 2018. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). He timely filed his § 2255 motion on March 19, 2019. *See* 28 U.S.C. § 2255(f)(1); *Houston v. Lack*, 487 U.S. 266, 276 (1988).

### III. Access to File

The Court notes Helm's many protestations that counsel refused and continues to refuse to provide his case materials. The issue was thoroughly addressed and resolved before Helm filed his original § 2255 motion. *See* Mots. (Docs. 143, 145, 153); Orders (Docs. 144, 146, 151, 154). All of his attorneys received notice of these Orders. Helm continues to claim "my attorney has not communicated with me at all since" sentencing. *See* Mot. § 2255 (Doc. 165) at 22.

5

His statement is not credible. *See, e.g.*, Hoovestal Aff. (Doc. 150) at 1–5 ¶¶ 1–13 & Exs. Docs. 150-1 through 150-9.

## IV. Claims and Analysis

### A. Ineffective Assistance of Counsel

Helm claims that counsel was ineffective in various respects. These claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). At this stage of the proceedings, Helm must allege facts sufficient to support an inference (1) that counsel's performance fell outside the wide range of reasonable professional assistance, *id.* at 687-88, and (2) that there is a reasonable probability that, but for counsel's unprofessional performance, the result of the proceeding would have been different, *id.* at 694. *See also* Order (Doc. 160) at 2.

#### 1. "No communication with counsel"

Helm alleges that "many things" were not raised "[d]ue to lack of communication with counsel." Mot. § 2255 (Doc. 165) at 5. But, despite an opportunity to amend, he fails to connect an issue not raised with either a realistic prospect of a better outcome or an explanation of why he would have opted for trial rather than pleading guilty had he and counsel had more communication. As a result, his allegations do not support an inference either that it was unreasonable for counsel to fail to do what Helm claims he should have or that Helm had a realistic probability of a better outcome. Neither prong of the *Strickland* test is

met. This claim is denied.

### 2. "Improper denial of motion to dismiss not addressed on appeal"

Helm does not explain why denial of his motion to dismiss (Docs. 69, 70) was "improper." *See* Mot. § 2255 at 7.

The motion to dismiss for preindictment delay did not present a close call. The first controlled buy of 1.1 grams of methamphetamine occurred on May 8, 2014. Helm was arrested by state officers on September 3 and charged in Yellowstone County on September 16, 2014. Although the United States faced a limitations period of a full five years, *see* 18 U.S.C. § 3282(a), it indicted Helm on May 22, 2015. Helm remains unable to point to actual prejudice or any unfair exploitation of this brief delay. The mere fact that no one stopped Helm from continuing to commit crimes after the first controlled buy of 1.1 grams of methamphetamine is not a basis for dismissing the charges against him. The Court sees no realistic prospect that Helm might have prevailed on appeal. *See, e.g., United States v. Corona-Verbera*, 509 F.3d 1105, 1112–13 (9th Cir. 2007) (holding that defendant failed to show actual prejudice from eight-year preindictment delay).

Helm's arguments based on Federal Rule of Criminal Procedure 48(b) and the Speedy Trial Act misread the law. *See* Order (Doc. 88) at 4–6.

Helm's claim that the denial of his motion to dismiss should have been

7

appealed meets neither prong of the *Strickland* test. *See Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). This claim is denied.

### 3. "Motions not filed – ineffective counsel"

Helm claims "[m]any things were not done in my defense." Mot. § 2255 at 8. As the Court has already explained, "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. Listing things counsel did not investigate or litigate, *see* Mot. § 2255 at 16–17, does not show that counsel violated Helm's Sixth Amendment right to effective assistance. Neither prong of the *Strickland* test is met. This claim is denied.

### 4. "Evidence not obtained for defense"

Helm claims his counsel "ignored" his "many letters to counsel to obtain evidence and request evidence" as well as his family's efforts to gather evidence and bring it to counsel. Mot. § 2255 at 9.

Under the circumstances here, few competent attorneys would have seriously considered an entrapment argument. Helm persisted in drug trafficking over five months despite an intervening arrest, *see* Presentence Report ¶¶ 10–13, and had three prior felony convictions for drug trafficking, *see id.* at ¶¶ 43, 44, 49. One person accused him of being her supplier and threatening her with a gun because he believed she "snitched" on someone else. *See id.* at 15–16. This

evidence suggests Helm embraced his role, not that he was entrapped. Whether the evidence was true or false, counsel had to weigh it against an entrapment argument.

Both this Court and the Court of Appeals agreed the motion to suppress lacked merit, and Helm does not explain how anything on his list, *see* Mot. § 2255 at 18–19, 23, might have cast the entire motion in a light significantly more favorable to him.

Helm suggests he had alibi evidence, but the only date he mentions is April 1 (Doc. 165 at 18), which was not relevant to any charge against him, much less a charge to which he pled guilty.

Neither prong of the *Strickland* test is met. This claim is denied.

### 5. Voluntariness of Guilty Plea

Helm does not actually challenge the voluntariness of his guilty plea. In his supplement, he says "I wish not to go back or be remanded to trial." Supp. (Doc. 165-1) at 8. But, as many of his arguments call into question the voluntariness of his plea, they must be addressed.

Helm asserts that he was "coerced to take a plea instead of proceeding with trial" because he "was told I was going to get a minimum of thirty-five years due to stacked gun charges." Mot. § 2255 (Doc. 165) at 21. That advice was correct. Counsel had a duty to give it as often and as emphatically as necessary to make

9

Helm understand the reality and gravity of it. A defendant who chooses to plead guilty solely because he wants to avoid the possibility of receiving a death sentence if convicted at trial is not pleading guilty involuntarily. *See Brady v. United States*, 397 U.S. 742, 750 (1970). Likewise, Helm's guilty plea was not involuntary even if it was entered solely because Helm did not want to incur the sentence that would result if he were convicted at trial. Nor does Helm add any allegation supporting an inference that a reasonable person in his position might realistically prefer trial to the very favorable plea offer he received and accepted.

Helm contends that he "did not fully understand the depths of what I was pleading to and was forced to do so without proper medication and treatment for mental health issues." *Id.* at 26. At the change of plea hearing, however, Helm said he was taking appropriate medication and had no mental health issues that would interfere with his ability to proceed. *See* Change of Plea Tr. (Doc. 108) at 16:1–17:10. The Court and the attorneys observed Helm throughout, and there was no indication he was "having an anxiety attack." Mot. § 2255 at 21. His current allegations fail to identify anything unreasonable in counsel's performance and fail to explain how or why counsel's unreasonable performance convinced him to plead guilty even though he might reasonably have opted for trial.

Helm also alleges he was "misinformed by counsel about the time I would receive" on the guilty plea. He thought he would "receive additional time off for

programs and R-DAP," but, due to the gun charge, he cannot. *Id.* at 26; *see also* Supp. (Doc. 165-1) at 6. There is no reason to suppose Helm would have proceeded to trial had he known his actual sentence would be 170 months. He knew his guilty plea exposed him to a ten-year *minimum* sentence but the actual sentence, predicated on 18 U.S.C. § 3553(a) and influenced by the Sentencing Guidelines, might be more severe. *See* Change of Plea Tr. (Doc. 108) at 18:9–19:23, 24:12–25:14, 26:4–28:10. As explained throughout this Order, Helm does not articulate a sound legal or factual reason to believe he had a reasonable chance of acquittal on any count at trial.

Under the circumstances, the discrepancy between a ten-year minimum sentence, the 170-month sentence imposed, and the 35-year minimum sentence Helm stood to receive if convicted at trial does not persuade the Court that alleged misinformation about the sentence contributed to Helm's decision to plead guilty. In fact, had he gone to trial and been convicted on just Counts 1 and 3—the counts to which he pled guilty—Helm's advisory guideline range on Count 1 would have been higher, 135 to 168 months, with the 60-month mandatory minimum on Count 3 on top of that. *See* Presentence Report ¶ 33; U.S.S.G. ch. 5 Part A (Sentencing Table).

To the extent Helm claims his guilty plea was involuntary, the claim is denied.

11

### 6. Ineffective Assistance at Sentencing

Helm contends that counsel did not solicit his input before sentencing and told him any objections to the presentence report "didn't matter I was only getting ten years the two five-year mandatory minimum consecutive terms and that was it." *Id.* at 22. Helm says he "still wanted to argue drug amount weights, witness statements and guideline range" and "address other issues such as mental health eval." *Id.* at 22. In his supplement, he asserts that he wanted to seek role adjustments and that his offense level could have been as low as 14 or 16 rather than 30. *See* Supp. (Doc. 165-1) at 7.

Drug quantity was not a difficult issue in this case. Helm misunderstands a central point: the Sentencing Guidelines require courts to "use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the . . . methamphetamine (actual), whichever is greater." U.S.S.G. § 2D1.1(c) Note B (Nov. 1, 2016). Laboratory analyses showed that over 47 grams of actual methamphetamine were received or seized from Helm. *See* Presentence Report ¶¶ 10–14.[3] But the "dope on the table" was

---

[3] This figure assumes "1.1 grams of 96% purity" is 1.056 grams of actual methamphetamine, *see* Presentence Report ¶ 10, "1.5 grams of 73.6% purity" is 1.104 grams of actual meth, *see id.* ¶ 11, and so on, *see id.* ¶¶ 12, 14. The probation officer added all amounts stated—1.1 grams + 1.5 grams, and so on—and called the total "actual methamphetamine." *See* Presentence Report ¶ 20. Possibly the officer meant the lab reports showed 1.4 grams of meth were seized, it was 96% pure, and the actual meth was 1.1 grams, and so on. Here, the Court gives Helm the benefit of the doubt, disregards the total in ¶ 20, and assumes the lower figures are the correct ones. Even so, Helm was plainly responsible for more than 50 grams of actual

not the only methamphetamine to be considered in the total drug amounts.
Estimates by witness-participants were also relevant evidence. Distribution of a
single quarter of an ounce of actual methamphetamine to anyone—a little over 7
grams—would suffice to anchor Helm's base offense level at 30. *See* U.S.S.G. §
2D1.1(c)(5). One witness-participant indicated that Helm provided "1.75 grams or
3.5 grams every couple of days," averaging "¼ ounce of methamphetamine per
week." Presentence Report ¶ 15. The same person described one occasion when
Helm had at least ¼ pound on hand and indicated that Helm eventually provided
"½ an ounce at a time and up to two ounces per week." *Id.* Helm admitted
trafficking with the persons who gave statements against him. *See* Change of Plea
Tr. (Doc. 108) at 33:13–38:13. And at least one of them was held responsible for
50 to 150 grams of actual methamphetamine, just like Helm. *See* Presentence
Report ¶ 17. Nothing in Helm's current allegations counters these facts. It is not
reasonable to suppose Helm could have been found responsible for less than 50
grams of actual methamphetamine.

While a reasonably competent attorney could have chosen to contest some of
the information in the presentence report, such as Anderson's report that Helm
threatened her with a gun, *see* Sentencing Tr. (Doc. 140) at 11:9–12:16;
Presentence Report ¶ 16, the same attorney would also perceive the potential

---

methamphetamine.

13

downside. In response, the United States could have called witnesses and presented firsthand testimony that might prove difficult for the Court to ignore. Helm offers no reason to suppose it was unreasonable for counsel to avoid such issues. And counsel specifically asked the Court to consider Helm's mental health and rehabilitative needs in selecting the sentence. *See* Sentencing Tr. (Doc. 140) at 8:14–10:14.

The objections and arguments Helm wanted counsel to make do not support an inference that it was unreasonable for counsel to forego objection to the presentence report. Helm's allegations support neither an inference that counsel's performance was unreasonable nor an inference that a less severe sentence was a viable prospect. Neither prong of the *Strickland* test is met. This claim is denied.

### 7. Officer Clyatt and Sergeant Finnegan

Helm suggests the whole case against him was undermined when the Billings Police Department fired Officer Clyatt for making false statements. *See* Mot. § 2255 (Doc. 165) at 23; Supp. (Doc. 165-1) at 5.

The Court will take judicial notice that Officer Clyatt was indeed fired for making false statements. *See* Fed. R. Evid. 201(c). In response to one of Helm's pretrial motions, the United States conceded that Clyatt would have been a prosecution witness on Counts 4 and 5. His firing motivated the dismissal of those counts. *See* Gov't Resp. to Mot. (Doc. 50) at 2–3. But there is no reason to

14

suppose Clyatt's participation infected the entire case against Helm. Helm does not allege that Clyatt was fired for making false statements about him or about anything involved in the investigation of his co-conspirators. A prosecutor might well believe a verdict beyond reasonable doubt on Counts 4 and 5 was unlikely due to the chief witness's foibles, but that does not mean the witness lied about anything that remained at issue in Helm's case.

Helm offers no reason to suppose that Sergeant Finnegan's suicide had anything at all to do with him. The allegation that Finnegan gave false testimony, *see* Mot. § 2255 (Doc. 165-1) at 5, is baseless, *see* Mot. Hr'g Tr. (Doc. 62) at 7:13– 8:8.

Neither prong of the *Strickland* test is met. This claim is denied.

**B.** *United States v. Davis*

Helm asserts that he is entitled to relief because the recent decision in *United States v. Davis*, __ U.S. __, 139 S. Ct. 2319 (2019), found 18 U.S.C. § 924(c) unconstitutional. At least arguably, Helm's claim under *Davis* is not a claim of ineffective assistance of counsel.

*Davis* concerned only the definition of "crime of violence" in § 924(c)(3)(B). Helm was convicted of possessing a firearm in furtherance of a "drug trafficking crime," which is defined in § 924(c)(2). That definition has not been held unconstitutional. *Davis* does not apply to Helm's case. This claim, *see*

Supp. (Doc. 165-1) at 8, is denied.

The Court notes that Helm also objects to the potential stacking of sentences under § 924(c). The First Step Act amended § 924(c) to require that the 25-year penalty for second or subsequent convictions applies only "after a prior conviction ... has become final." *See* First Step Act, Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5221–22 (Dec. 21, 2018). But § 403(b), *see* 132 Stat. at 5222, provides that the amendment applies "to any offense that was committed before the date of enactment of this Act" only "if a sentence for the offense has not been imposed as of such date of enactment." Helm's sentence was imposed on January 19, 2017, almost two years before enactment of the First Step Act on December 21, 2018. He is not entitled to the benefit of the amendment.

Neither of these claims could succeed if presented under the rubric of ineffective assistance of counsel. Counsel had no reason to anticipate the First Step Act's amendment of § 924(c), and *Davis* obviously does not apply to Helm's case.

Both as freestanding claims and as claims of ineffective assistance, these claims are denied.

### V. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255

Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

While the Court has addressed a few of the many points on which Helm misunderstands the law that applied to his case, there are too many such points to address each separately. As stated in the Order requiring Helm to submit an amended § 2255 motion, the central problem is that his list of things counsel did not do does not support an inference either that counsel performed unreasonably or that Helm was prejudiced as a result. Despite opportunity to address precisely those issues, *see* Order (Doc. 160) at 2–3, Helm remains unable to explain why his allegations support further exploration. He merely repeats his complaints about what counsel did not do. He fails to show that, had counsel done more, Helm would have done better.

From the outset of the case, Helm faced a highly realistic prospect of a mandatory minimum 35-year sentence. Counsel negotiated a plea agreement resulting in dismissal of five counts and requiring Helm to plead guilty to just two

counts, with a mandatory minimum sentence of ten years rather than 35. Helm was actually sentenced to 170 months, but that was still less than he likely would have received had he been convicted only on the two counts to which he pled guilty, to say nothing of the five other counts.

Helm's motion presents no close calls. There is simply no colorable claim of ineffective assistance of counsel. Reasonable jurists would find no basis to encourage mere relitigation of the criminal case. A certificate of appealability is not warranted.

Accordingly, IT IS ORDERED:

1. Helm's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Docs. 165, 165-1) is DENIED.

2. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Helm files a Notice of Appeal.

3. The Clerk of Court shall ensure that all pending motions in this case and in CV 19-33-BLG-SPW are terminated and shall close the civil file by entering judgment in favor of the United States and against Helm.

DATED this 26th day of February, 2020.

Susan P. Watters
United States District Court